# 2015-1564

# United States Court of Appeals
# for the Federal Circuit

---

TRIPLE TEE GOLF, INC., a Florida corporation,

*Plaintiff-Appellant,*

*v.*

TAYLOR MADE GOLF COMPANY, INC., a Delaware corporation,

*Defendant-Appellee.*

---

*Appeal from the United States District Court for the Southern District of California in Case No. 3:11-cv-02974-JLSWVG, Judge Janis L. Sammartino*

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT

---

Melvin K. Silverman
M.K. Silverman & Associates
1000 West McNab Road,
Suite 308
Pompano Beach, FL 33069
(954) 489-0502

Jacqueline Tadros
Jacqueline Tadros, P.A.
401 East Las Olas Blvd.,
Suite 1400
Ft. Lauderdale, FL 33301
(954) 351-7479

*Attorneys for Plaintiff-Appellant*

January 29, 2016

## <u>CERTIFICATE OF INTEREST</u>

Counsel for plaintiff-appellant hereby certifies the following:

1.     The full name of every party represented by me is:

    Triple Tee Golf, Inc.

2.     The name of the real party in interest (if the party named in the motion is not the real party in interest) represented by me is:

    The real party in interest is named in the caption.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None.

4.     The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are appearing in this Court are:

    Melvin K. Silverman, M.K. Silverman and Associates, Jacqueline Tadros, Jacqueline Tadros, P.A.


    January 29, 2016               /s/ Melvin Silverman

_____          _____

         Date                        Signature of counsel

                                  Melvin K. Silverman

                                _____

                                Printed name of counsel

# TABLE OF CONTENTS

Certificate of Interest……………………………………………………………i

Table of Contents…………………………………………………………..........ii

Table of Authorities………………………………………………………......iv

Glossary of Abbreviations……………………………………………….……vi

Introduction………………………………………………………………...1

Argument………………………...………………………………………......2

    I.     Adjustability of the Weighting Means………………………………..2

        A.     Taylor Made misconstrues and misapplies the transition term "comprising" in original claim 9…………………………2

        B.     The embodiments disclosed in Figs. 14, 15, 16, 17-19 of the '660 patent <u>do not</u> illustrate weighting means fixed in place during design or manufacture……………………………5

        C.     Original claim 9 does not recite a method of manufacture, but a method of use, namely a method of enhancing golf club performance, by a player…………………………….9

    II.    The Path of the Weighting Strategy………………………………….11

        A.     Taylor Made construes the scope of original claim 9(c)(i) too broadly <u>*and*</u> claim 20(c)(i) too narrowly and consequently mistakenly concludes that claim scope was altered during the *ex parte* reexamination……………......11

        B.     Taylor Made's claim construction, relies exclusively on expert testimony, and contradicts the plain language of the claims and specification………………………………..18

        C.     There is no rule or presumption that an amendment made during re-examination results in a change in claim scope……22

Conclusion………………………………………………………..........24

Certificate of Service

Certificate of Compliance

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Biagro W. Sales, Inc. v. Grow More,*
    423 F.3d 1296 (Fed. Cir. 2005)…………………………………………....19

*Bloom Eng'g Co. v. North Am. Mfg. Co.,*
    129 F.3d 1247 (Fed. Cir. 1997)…………………………………………22

*Dippin' Dots, Inc. v. Mosey,*
    476 F. 3d 1337 (Fed. Cir. 2007)…………………………………………....4

*In re Robert Skvorecz,*
    580 F.3d 1262 (Fed. Cir. 2009)………………………………………..5

*In re Suitco Surface, Inc.,*
    603 F.3d 1255 (Fed. Cir. 2010)………………………………………..5

*Invitrogen Corp. v. Biocrest Manufacturing, L.P.,*
    327 F.3d 1364 (Fed. Cir. 2003)…………………………………………..4

*Kaufman Co. v. Lantech, Inc.,*
    807 F.2d 970 (Fed.Cir.1986)…………………………………………....23

*Laitram Corp. v. NEC Corp.,*
    952 F.2d 1357 (Fed.Cir.1991)…………………………………………23, 24

*Moleculon Research Corp. v. CBS, Inc.,*
    793 F.2d 1261 (Fed.Cir.1986)…………………………………………4, 5

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)…………………………………………....19

*Spectrum Int'l Inc. v. Sterlite Corp.,*
    164 F.3d 1372 (Fed. Cir. 1998)…………………………………………..4

*Tennant Co. v. Hako Minuteman, Inc.,*
    878 F.2d 1413 (Fed.Cir.1989)…………………………………………..23

**<u>Statutes</u>**

35 U.S.C. §252……………………………………………………………23

## Glossary of Abbreviations

The following abbreviations are used in Appellant's brief:

**Parties:**

| | |
|---|---|
| Appellant: | Triple Tee Golf, Inc. |
| TGolf: | Triple Tee Golf, Inc. |
| Appellee: | Taylor Made Golf Company, Inc. |
| Taylor Made: | Taylor Made Golf Company, Inc. |

**Patent References:**

| | |
|---|---|
| '660 Patent: | U.S. Pat. No. 7,128,660 (to Gillig) entitled, "Method of Golf Club Performance Enhancement and Articles Resultant Therefrom" |
| Dammen: | WO 01/66199 A1 (to Dammen) entitled, "Golf Club Head With Adjustable Weights" |

**Defined Terms:**

| | |
|---|---|
| A_____ | Appendix page(s) |
| (__:_____) | Column and line number(s) in patent reference(s) |
| Claim 9: | Claim 9 of U.S. Pat. No. 7,128,660 (to Gillig) |
| Original Claim 9: | Claim 9 of U.S. Pat. No. 7,128,660 (to Gillig) |
| Claim 20: | Claim 20 of U.S. Pat. No. 7,128,660 (to Gillig) subsequent to the *Ex Parte* Reexamination |
| New Claim 20: | Claim 20 of U.S. Pat. No. 7,128,660 (to Gillig) subsequent to the *Ex Parte* Reexamination |
| court *or* district court trial court | United States District Court for the Southern *or* District of California, Honorable Janis L. Sammartino, presiding |
| Court | United States Court of Appeals for the Federal |

| | Circuit |
|---|---|
| examiner | U.S. Patent and Trademark Office Examiner |
| *ex parte* reexamination: | *Ex Parte* Reexamination of Claim Nos. 1 and 9 of U.S. Pat. No. 7,128,660 based on WO 01/661991 A1, filed by Taylor Made/Adidas on February 6, 2013 |
| *inter partes* reexamination[1]: | *Inter Partes* Reexamination of U.S. Pat. No. 7,128,660 filed by Taylor Made/Adidas on July 20, 2012. |
| MPEP | Manual of Patent Examining Procedure |
| cell or cell location: | A coordinate within the 3x3x3 matrix. |
| cube: | A 3x3x3 matrix with 27 coordinates along an X-Y-Z axis. |



---

[1] The *inter partes* reexamination is not related to an issue on appeal. Claim 9 of U.S. Pat. No. 7,128,660 survived the *inter partes* reexamination.

**INTRODUCTION**

The scope of claim 9 was not substantively changed subsequent to the *ex parte* reexamination of the '660 patent.[1] There is nothing in the specification, including the figures, that suggests or even hints at the notion that the weighting means are permanently fixed within the golf club head during manufacture or design. The disclosure of the '660 patent teaches a golf club head that may be modified by a player to adapt to course conditions or an individual player's skill level. The ability to modify the club head and thereby enhance golf club performance, by adjusting weighting means within the void space of the club head is at the very core of the invention. In construing the scope, the district court failed to consider claim language in view of the specification.

The weighting strategy in 9(c)(i) is identical to that of claim 20(c)(i). Claims 9(c)(i) and 20(c)(i) each delineate the same allowable zone of coordinate cells within which the weighting strategy <u>must</u> occur. Within this defined zone of the volumetric matrix, there are multiple pathways that may be selectably employed. Regardless of the pathway selected within the allowable zone, an increase in the Z-axis value necessitates that the Y-axis value will either increase or stay constant. Thus, the additional language, "*in which an increase in a Z-axis value does not*

---

[1] It is noted that neither the *inter partes* reexamination nor U.S. Pat. No. 7,854,667 ("the '667 patent") discussed in Appellee's Brief at pp. 7-9 and 24-25 respectively, are at issue in this Appeal.

*correspond to a decrease in a Y-axis value*" in claim 20(c)(i) did not change the scope of 9(c)(i) since the limitation was inherent.

**ARGUMENT**

**I.     ADJUSTABILITY OF THE WEIGHTING MEANS**

> **A.     Taylor Made misconstrues and misapplies the meaning of the transition term "comprising" in original claim 9.**

In an attempt to illustrate that its reading of claim 9 is not diametrically opposed to the specification of the '660 patent, Taylor Made alleges that, "[c]laim 9, properly interpreted, thus does not require the weighting means to be fixed during design or manufacture. Claim 9 reads on a club head with a weight that is fixed in place during manufacture, but also reads on a golf club head having a weight capable of being adjusted or moved within the golf club by a user. This is the very essence of a "comprising" claim." Appellee's Brief, pp. 27-28.

Thus, Taylor Made's position is that although the steps in original claim 9 recite a method in which the weight is fixed in place during manufacture (a reading that categorically flies in the face of the teaching of the '660 patent), because the term "comprising" is used, the claim is open to the inclusion of an additional step that will transform the claim into one that also allows the weight to be adjusted or moved by a user.

First, it is noted that the phrase, "*in which an increase in a Z-axis value does not correspond to a decrease in a Y-axis value*", is **not** an additional step. It

merely refers to the path of the weighting strategy recited in section (c)(i) of claim 9. **A249** (2:12-16). Therefore, use of the open-ended transition term "comprising" is irrelevant and has no bearing on the additional language in section (c)(i), since it does not introduce an additional step.

Second, although a method could practice other steps in addition to the ones mentioned in original claim 9; the enumerated steps, namely 9(a), 9(b) and 9(c) must still all be practiced as recited in the claim. Thus, Taylor Made's argument must fail. It simply does not make any sense. How is it possible that the weighting means are fixed in steps 9(c)(i), 9(c)(ii), 9(c)(iii) and 9(c)(iv), while also being open to adjustment in an additional step within the <u>same</u> claim? It is not. It is not feasible for the void space within the club head to include multiple permanently fixed weighting means and also still be amenable to the insertion of additional adjustable weighting elements.[2] Inclusion of the phrase "*in which an increase in a Z-axis value does not correspond to a decrease in a Y-axis value*" in strategy 9(c)(i) does not convert what is otherwise alleged to be a method in which the weight is fixed in place during manufacture, to one that uses movable weights that

---

[2] The club head of a typical driver weighs about 200 grams, of which typically no more than up to about 20 to 30 grams is available to be used as "discretionary" weighting element that can be positioned in or on the club head to move its CG. **A457** (Beach Decl.) ¶27. The rest of the weight (typically a minimum of about 170 to 180 grams) is needed for the basic construction of the club head (club head shell, strike plate, sole plate, hosel). *Id*.

3

are adjustable by a user, simply because the open-ended transition term "comprising" is used.

The transition "comprising" in a method claim indicates that the claim is open-ended and allows for additional steps. *Invitrogen Corp. v. Biocrest Manufacturing, L.P.,* 327 F.3d 1364, 1368 (Fed. Cir. 2003). It is not however a weasel word with which to abrogate claim limitations. *See Dippin' Dots, Inc. v. Mosey*, 476 F. 3d 1337, 1343 (Fed. Cir. 2007) (*citing Spectrum Int'l Inc. v. Sterlite Corp*., 164 F.3d 1372, 1380 (Fed. Cir. 1998)). The presumption raised by the term "comprising" does not reach into each step to render every word and phrase therein open-ended. *Id*.

For reasons stated in Appellant's initial brief, proper construction of claim 9 requires a finding that the weighting strategy is adjustable by a user. Appellant's Brief, pp. 14-18, 20-24. Taylor Made misapplies "comprising" to mean that claim 9 can read on a golf club head with a weight that is fixed in place during manufacture *and* the polar opposite, namely a golf club head that is adjustable by the user.

This interpretation misconstrues the meaning of the term "comprising", the breadth of which should not be construed as entirely unlimited. *See Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271 (Fed.Cir.1986) (finding that

using "comprising" to expand a claim to a 2 x 2 x 2 puzzle to cover a 3 x 3 x 3 or 4

x 4 x 4 puzzle would vitiate limitation to "eight cube pieces as a composite cube").

A construction that is "unreasonably broad" and which does not "reasonably

reflect the plain language and disclosure" will not pass muster. *In re Suitco*

*Surface, Inc.*, 603 F.3d 1255, 1260 (Fed. Cir. 2010). "[C]laims should always be

read in light of the specification and teachings in the underlying patent." *In re*

*Suitco Surface, Inc.*, 603 F.3d 1255, 1260(Fed. Cir. 2010). *See also, In re Robert*

*Skvorecz,* 580 F.3d 1262, 1267-68 (Fed. Cir. 2009)(use of the term "comprising"

does not mean that a claim containing "offset" structure could be anticipated by a

reference that did not contain the "offset" structure).

Taylor Made's reading of claim 9 must fail since it is antithetical to the

claim language and specification. Appellant's Brief, pp. 14-18, 20-24.

### B. The embodiments disclosed in Figs. 14, 15, 16, 17-19 of the '660 patent <u>do not</u> illustrate weighting means fixed in place during design or manufacture.

Although Taylor Made alleges that the embodiments of Figs. 14, 15

and 17-19 "appear" to have fixed weights (Appellee's Brief, p. 4) it concedes that

the notion of fixed weights is "not explicitly discussed in the specification." *Id*.[3]

What is *explicitly* discussed in the specification is that Fig. 14 shows the use

---

[3] *See also* Appellee's Brief, p. 31.

of weights E and F in two different areas of the golf club. **A242** (6:4-5). Therein a good **player would move weight E** to the back of the club to achieve as penetrating a shot as he could and **would also position weight F** to reduce spin, **putting an additional weight** in the X-axis center (X2) of the club. *Id.* (6:5-9) (emphasis added).

It is clear that the player retains the control, ability and freedom to "move" and "position" the weights within the coordinate system, including "putting an additional weight" to effect a particular result. *Id.* The weights are not permanently affixed at those coordinates. Rather, they are placed at a particular coordinate or coordinates selected by the player, in this case, "a good player".

Fig. 15 shows the effect of a horse shoe-like structure G, symmetric about the YZ plane at the X2 position. This helps the basic or average player. Such a player **moves the weight** toward the heel and the toe to make his sweet spot as wide as possible. *Id.* (6:17–24) (emphasis added).

Referring to Fig. 16, there is shown the use of a propeller type weight H, having its center at (X2, Y2, Z2), which would be used if one were hitting the ball a bit to the left and low. To compensate for that, the **weight is moved to the left**, so that the ball will move to the right. To counteract **moving the weight** to the left, **one may place a projection of the weight H down toward the right hand corner** to get the ball up into the air again, and to **also move another projection**

6

**to the rear** for penetration and movement up in the air. *Id.* (6:28-36) (emphasis added).

With reference to Fig. 17, there is shown the use of a saddle-like weighting element I inserted along the sides and behind the face plate. The benefits of such a weighting geometry are that the weight is set to hit the ball a little higher because the weight is low. It also tends to give it a bit more of penetration, because the weight is moved back. **By also moving it to the left, one pushes the ball out to the right**, tending to give a shot slightly to the right and is penetrating, but yet will have some spin on it. So it starts out low, goes right and then slows down. *Id.* at (6:37–46) (emphasis added).

Figs. 18-20 are further illustrations of weighting means positioned at various coordinates. **A243** (7:11–24). In particular the descriptions of Figs. 18-20 recite the use of "**snap-on**" and "**clip-on**" weighting elements. **A241** (4:11-17); **A243** (7:11-12)(emphasis added). It is specious for Taylor Made to allege that weights shown in Figs. 14, 15, 17 and 18-20 are fixed in place and lack the ability to be moved or adjusted within the club head. (Appellee's Brief, p. 31). It is understood that "snap-on" and "clip-on" weights can be attached or detached.

Thus, it should be clear that Figs. 14, 15, 16, 17-20 illustrate weights positioned within the coordinate system of the golf club head at a *particular point in time*. The said illustrations are merely snapshots. They demonstrate possible

placement of the weighting means. The weights are not frozen in place as they would be if fixed at the point of manufacture or design. They are adjustable. The player retains autonomy and control over the positioning of the weights. The weights are temporarily fixed at a particular coordinate or coordinates to suit the player or situation. *See* Appellant's Brief pp. 14-18.

Appellant notes that the term "manufacture", or any variation thereof, is used only once in the '660 patent. Namely, in the description of the prior art the patentee states that, "[m]y issued U.S. Pat. No. 6,530,848 (2003) sets forth the use of weighting options for the center of gravity ("CG") of a club resultant from a substantial hollowing out of or void space in a top or predominant portion of the club head, as a manufacturing step." **A240** (1:30-34). Manufacturing in this case refers to the hollowing out of the void space within the club head. *Id*.

Additionally the term "fix", or any variation thereof, is also used only once in the summary of the invention in regard to the sole portion not the weighting means within the void space of a club head. Namely, "[w]eight of uniform or non-uniform distribution may also selectably be provided within the void space behind the face plate and above the **fixed sole portion**". *Id.* at (2:28-31) (emphasis added).

The term "design", or any variation thereof, is also used only once. It is used in the title of a reference in the "Other Publications" section above the Abstract.

Namely, "Art Chou, Peter Gilbert, and Tom Olsavsky. Clubhead Designs: How to [sic] They Affect Ball Flight". **A227**.

Aside from these three unique instances, neither the term "manufacture", "design", "fixed" nor any variation thereof is used *anywhere* throughout the entire '660 patent. Accordingly there is not a scintilla of support for Taylor Made's position. The '660 patent is utterly devoid of *any* language that would even remotely suggest that the weights are fixed at the point of manufacture or design.

The concept of a permanently fixed weighting system is contrary to the purpose of the '660 patent and is neither explicitly nor implicitly disclosed. Taylor Made's claim construction is incorrect, since *inter alia* it is entirely divorced from the specification.

**C. Original claim 9 does not recite a method of manufacture, but a method of use, namely a method of enhancing golf club performance, by a player.**

Taylor Made alleges that, "[b]ased on the claim language, the weighting strategy was satisfied by simply placing a weighting means at the desired location, whether during design, manufacture, **or use**, without any implication that its location might be adjusted." Appellee's Brief, p.23. (emphasis added)(*citing* (Beach Decl. ¶20). *See also*, Appellee's Brief pp. 30-31.

As a preliminary matter, Appellant notes that Taylor Made's allegation is internally inconsistent. If the weighting means are placed at the desired location

9

during use, they are most certainly adjustable.

Additionally, Appellant notes that Taylor Made's expert rendered an opinion based on only a portion of the language of section 9(c)(i). In particular, the terms "to modify backspin" and "to decrease backspin" were blatantly omitted from the claim language in Mr. Beach's opinion.  Therefore, the opinion applies to an edited version, that is, only a segment of the claim language of section 9(c)(i). *See* **A455** ¶20 and **A243** (7:66-8:2).

Taylor Made alleges that backspin is modified by, providing weighting means between the recited coordinates, nothing more or less. It is the simple act of "providing" the weighting means that changes the original center of gravity of the golf club head and thereby modifies the backspin of the golf ball when the club head strikes it. Appellee's Brief, p. 31 (*citing* Beach Dec. ¶27).

In support of its position, Taylor Made states that, "[m]odifying backspin does not necessitate adjusting the location of the weighting means after its initial positioning; this is necessary only if it is desired to ***further modify*** backspin." Appellee's Brief, p. 31.

TGolf notes Mr. Beach stated that, "[t]o begin, it is well understood that ***repositioning*** a weighting element in a golf club head will result in a change in the location of the CG of the golf club head. One of the effects of changing the location of the CG will be the amount of backspin in a golf ball that club head

creates when it strikes the golf ball." **A457**, ¶27 (emphasis added). Thus, Mr.

Beach's statement relates to the ***repositioning*** of a weighting element and its effect

on CG and not as Taylor Made alleges merely "providing" or "positioning"

weighting means to change the "original center of gravity". Appellant further notes

that what Taylor Made refers to in its brief as "original center of gravity" is more

appropriately termed "center of mass".[4]

Taylor Made advances an absurd proposition that utterly fails to comport

with the purpose and essence of the invention, namely a method of enhancing golf

club performance by providing a **single** golf club having adjustable weighting

means in order to allow a player to derive the benefit of various weighting

strategies as recited in original claim 9.

## II.    THE PATH OF THE WEIGHTING STRATEGY

### A.    Taylor Made construes the scope of original claim 9(c)(i) too broadly ***and*** claim 20(c)(i) too narrowly and consequently mistakenly concludes that claim scope was altered during the *ex parte* reexamination.

### Claim 9 didn't allow weighting means to be provided "just about any place"

In regard to claim 9(c)(i) Taylor Made alleges that, "[i]n the absence of any

---

[4] A system's center of mass position is an inherent property of that system, while its center of gravity position depends both upon the system and upon its environment. *See* http://www.physics.byu.edu/faculty/christensen/Physics%20121/FTI/12%20Static%20Equilibrium/Center%20of%20Mass%20Versus%20Center%20of%20Gravity.htm

other restrictions in the claim, this meant that the weighting means could be provided just about any place within the golf club head." Appellee's Brief, p. 36 (lines 10-12) (*citing* Beach Decl. A456 ¶25). This statement betrays a fundamental misunderstanding of the claim language and is quite simply wrong.

Claim 9(c)(i) defines a specific region in which the weighting strategy can occur. In particular, the weighting means must be provided <u>between</u> a low Y, low Z (Y1, Z1) coordinate, of which there are three, namely (X1, Y1, Z1); (X2, Y1, Z1) and (X3, Y1, Z1) and a high Y, high Z (Y3, Z3) coordinate, of which there are also three, namely (X1, Y3, Z3); (X2, Y3, Z3) and (X3, Y3, Z3). There are nine coordinate cells within the volumetric matrix between a low Y, low Z and a high Y, high Z coordinate. *See* **A243** (7:66-8:2); Appellant's Brief, pp. 29-33. Referring to the color illustrations of the volumetric matrix, the weighting means could only be provided at the yellow and green coordinates, that is a total of fifteen possible cells within the weighting strategy.[5] Appellant's Brief, pp. 31-32.

Thus, the weighting strategy may only occur in approximately 56%, that is fifteen of a possible twenty-seven cells.[6] Hardly "just about anyplace".

Taylor Made, relying on the declaration of its expert witness, mistakenly reads claim 9(c)(i) to mean that the weighting means could be provided anywhere

---

[5] Three (Y1, Z1) <u>plus</u> three (Y3, Z3) <u>plus</u> nine coordinate cells in between (Y1, Z1) and (Y3, Z3) in the middle layer.

[6] The 3x3x3 volumetric matrix includes twenty-seven coordinate cells. See Appellant's Brief, pp. 31-32.

between the *entire* top layer and the *entire* bottom layer of the volumetric matrix. *See* Appellee's Brief, p. 36 (lines 10-12) (*citing* Beach Decl. ¶25). The "[s]trategy (c)(i) of claim 9 allowed the weighting means to be positioned just about any place within the golf club head, depending on whether it desired to increase or decrease backspin." Appellee's Brief, p. 47. "Thus, for example, strategy (c)(i) applies to the embodiment of Fig. 10 in the '660 patent, which shows a weighting element having coordinates of X2, Y3, Z1 and "affords high trajectory, ***high backspin*** and high penetration." *Id*. at pp. 47-48 (*citing* A242, 5:47-48 & Fig.10). "There is nothing in the '660 patent that teaches a person of ordinary skill that a weighting means "between a low Y, low Z coordinate…to a high Y, high Z coordinate" does not include a weighting means at a Y3, Z1 coordinate". *Id*. at p.48.

This is categorically **wrong**. The Y3, Z1 coordinates are specifically in the "forbidden" zone. They are not **between** a Y1, Z1 and Y3, Z3 coordinate and do not come within the ambit of claim 9(c)(i). *See* Appellant's Brief, pp. 29-32. The plain language of claim 9(c)(i) restricts the weighting means to placement between a Y1, Z1 and Y3, Z3 coordinate. *See* **A44** (7:66-8:2); Appellant's Brief, pp. 29-33.

Although X2, Y3, Z1 "affords high trajectory, ***high backspin*** and high penetration" that cell location does not comport with the specific limitations of the claim which states that the weighting means must fall between (Y1, Z1) and (Y3, Z3). *Id.* See also, the two dimensional illustration at page 31 of Appellant's Brief.



Taylor Made mistakenly assumes that just because a particular coordinate may result in high backspin, that it satisfies the limitation of claim 9(c)(i). It does not.

Claim 9(c)(i) does not state that the weighting means may be provided anywhere between a coordinate that results in a high backspin and a coordinate that results in a low backspin.

Taylor Made's interpretation, that claim 9 allows the weighting means to be provided "just about anyplace", is entirely too broad and contrary to the very notion of a weighting *strategy*.

The three dimensional illustration of the volumetric matrix on page 32 of Appellant's Brief is reproduced herein to demonstrate that the X2, Y3, Z1 coordinate is outside the claimed area within which the weighting strategy must occur.



**Claim 20 doesn't restrict the weighting strategy to one specific path**

Taylor Made alleges that claim 20(c)(i) restricts the adjustment of the weighting means to a singular path. Appellee's Brief, pp. 35-43. Namely, the path illustrated in Fig. 5 of the '660 patent. *Id.* at p.46, **A232.** This is **incorrect**.

The strategy of claim 20(c)(i) is limited to a particular set of coordinates, not to one particular path. The allowable zone of coordinates of claim 20(c)(i) is

identical to that of claim 9(c)(i). Appellant's Brief, pp. 29-33. It is clear that as the Z-axis increases, the Y-axis must also increase or stay constant ***within the allowable zone or set of coordinates*** as is mandated by the claim language.

This is the reason why the additional language in claim 20 merely states explicitly what is already an inherent limitation in claim 9. There is just no possible way that an increase in the Z-axis can result in a decrease in the Y-axis if one remains within the allowable zone.[7]

Fig. 5 illustrates one possible path for the weighting strategy along the YZ plane, namely (Y1, Z1) to (Y2, Z2) to (Y3, Z3). However, there are other strategies that do not follow the line of Fig. 5.

Thus, 20(c)(i) is broader and 9(c)(i) is narrower than Taylor Made alleges. The claims are in fact identical in scope since:

 (a) they both recite the same allowable zone of coordinates; <u>and</u>

 (b) it is **impossible** to decrease the Y-axis while increasing the Z-axis,

   within the allowable zone.

## <u>Fig. 5 is only one possible weighting strategy embodied in 9(c)(i) and 20(c)(i)</u>

With reference to Fig. 5, the chart corresponds to the YZ plane which is a vertical plane substantially parallel with toe face of the club. From Fig. 5, it may be noted minimum backspin is achieved at (Y3, Z3) and maximum backspin at (Y1,

---

[7] The green and yellow color coordinates of the volumetric matrix. Appellant's Brief, pp. 31-32.

(Y1, Z1). **A242** (5:13-23). From Fig. 5, it may also be seen that a low Y, low Z

coordinate refers to (Y1, Z1) and a high Y, high Z refers to (Y3, Z3). *Id. See also*

**A240** (2:48-51). Thus Fig. 5 correlates with claims 9(c)(i) and 20(c)(i) and

illustrates one possible weighting strategy.

Taylor Made alleges that TGolf uses Fig. 5 to limit the strategy of 9(c)(i) to

specify a particular line or path between a low Y, low Z coordinate and a high Y,

high Z coordinate on which the weighting means must be positioned. Appellee's

Brief, p. 47. This is incorrect.

Appellant contends that Fig. 5 is an example of <u>one</u> possible weighting

strategy embodied within the scope of claims 9(c)(i) and 20(c)(i). Fig. 5 does not

show the Y1, Z2 coordinates or the Y3, Z2 coordinates that are also within the

allowable zone.  Thus, for example, with reference to the YZ plane, another

possible weighting strategy could be from (Y1, Z1) to (Y1, Z2) to (Y3, Z3). Yet

another, strategy could be from (Y1, Z1) to (Y3, Z2) to (Y3, Z3).

Fig. 5 does not limit the weighting strategy of claim 9(c)(i) or 20(c)(i). The

weighting strategy of claim 9(c)(i) and 20(c)(i) is not limited to one specific line or

path. Rather, the strategy is limited to a <u>zone of allowable coordinates</u> within

which the weighting strategy may occur. *See* Appellant's Brief, pp. 31-32.

Fig. 5 is reproduced herein and illustrates allowable coordinates (Y1, Z2)

and (Y3, Z2) with a black "x". Forbidden coordinates are shown in a red "x".



FIG.5

## B. Taylor Made's claim construction relies exclusively on expert testimony and contradicts the plain language of the claims and specification.

**Taylor Made's expert strays far afield from the patent disclosure**

Taylor Made engages in a protracted discussion regarding non-decreasing functions, decreasing backspin, principles regarding center of gravity, the weight of a club head, changes in magnitude and net change of rpm as it relates to CG, negative movement, net backspin change, ball flight, positive weighting means, negative weighting means, etcetera. Appellee's Brief, pp. 36-43. Taylor Made relies on expert testimony that focuses on an analysis of the physics of golf and utterly ignores the specification. This serves to obfuscate and detract attention from the plain language of the claims. Extrinsic evidence can't be used to override

intrinsic evidence. *Phillips* spells out five reasons why extrinsic evidence is

inherently less reliable than the intrinsic evidence:

> First, extrinsic evidence by definition is not part of the
> patent and does not have the specification's virtue of being
> created at the time of patent prosecution for the purpose of
> explaining the patent's scope and meaning. Second, while
> claims are construed as they would be understood by a
> hypothetical person of skill in the art, extrinsic
> publications may not be written by or for skilled artisans
> and therefore may not reflect the understanding of a
> skilled artisan in the field of the patent. Third, extrinsic
> evidence consisting of expert reports and testimony is
> generated at the time of and for the purpose of litigation
> and thus can suffer from bias that is not present in
> intrinsic evidence. . . . Fourth, there is a virtually
> unbounded universe of potential extrinsic evidence of
> some marginal relevance that could be brought to bear on
> any claim construction question. . . . Finally, undue
> reliance on extrinsic evidence poses the risk that it will be
> used to change the meaning of claims in derogation of the
> "indisputable public records consisting of the claims, the
> specification and the prosecution history," thereby
> undermining the public notice function of patents.

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005)(*en banc*). Appellee

uses its expert to reconceptualize the claims and fails to tie his measurement

approach to the '660 patent's own description of the invention. *See Biagro W.*

*Sales, Inc. v. Grow More,* 423 F.3d 1296, 1302 (Fed. Cir. 2005).

The plain language of claim 9 recites a word picture that is clearly illustrated

in the two and three dimensional color renditions based on Figs. 2, 6, 8, 10-12 of

the '660 patent. Appellant's Brief, pp.31-32.

The weighting strategy of claim 9(c)(i) specifically excludes twelve possible coordinates and identifies fifteen possible coordinates within the volumetric matrix. *Id.*, **A243** (7:66- 8:2).

The plain language of new claim 20(c)(i) identifies the exact same fifteen possible coordinates and in addition states what is patently clear. Namely, that as the Z-axis increases from Z1 to Z2 to Z3 *or* from Z2 to Z3 *or* Z1 to Z3, the Y axis must also increase or stay constant. This restriction ensures that the weighting strategy remains within the yellow and green color coated cell coordinates (*See* Appellant's Brief, pp. 31-32) and does not stray into the other "forbidden" coordinates shown below:

Coordinates Excluded From The Weighting Strategy of 9(c)(i) and 20(c)(i)

Top Layer:

| X1, Y1, Z3 | X2, Y1, Z3 | X3, Y1, Z3 |
| X1, Y2, Z3 | X2, Y2, Z3 | X3, Y2, Z3 |

Forbidden Zone

Bottom Layer:

| X1, Y2, Z1 | X2, Y2, Z1 | X3, Y2, Z1 |
| X1, Y3, Z1 | X2, Y3, Z1 | X3, Y3, Z1 |

Forbidden Zone

*Id.*, **A249** (2:15-16).

If the weighting strategy of claim 9(c)(i) encompassed forbidden zones of the top and bottom layers shown herein, then as the Z-axis increases, the Y-axis value *could* decrease. For example, a weighting strategy from forbidden coordinates (Y3, Z1) to any of the forbidden top rows in the top layer would result

in an increase in Z-axis and decrease in Y-axis value, namely from Y3 to Y2 or Y1. This strategy however is strictly forbidden in both claims 9 and 20 because the said rows do not fall **between** the **low Y, low Z** (Y1, Z1) and **high Y, high Z** (Y3, Z3) coordinates. *See* Appellant's Brief, pp. 31-32.

The weighting strategy of claims 9(c)(i) and 20(c)(i) is excluded from Dammen. In other words, as the Z-axis increased in Dammen, there was no requirement that the Y-axis increase or remain constant. In fact, as the Z-axis increased in Dammen, the Y-axis decreased.  Dammen teaches that, "[i]n order for the golf club head to be stable, it is also important that the masses on either side of the centre [sic] of the striking surface (the sweet spot) is approximately equal. **A798** (lines 17-19).

It is a misnomer to state that the weighting strategy of claim 20(c)(i) is restricted to a particular path. Rather, the strategy is limited to a particular set of coordinates, not to a single path. Taylor Made's argument has no meaning as a matter of claim construction since neither claim 9(c)(i) nor 20(c)(i) is limited to one pathway.

Thus claim 20(c)(i) **does not** impose any new limitations. Claim 9(c)(i) included the exact same restriction on the weighting strategy. Namely, weighting means **could not** be provided anywhere within two forbidden rows, within each of the top and bottom layers. *Id*., **A243** (7:66- 8:2)**.**

**C.    There is no rule or presumption that an amendment made during re-examination results in a change in claim scope.**

Taylor Made incorrectly analogizes the present matter to the one in *Bloom Eng'g Co. v. North Am. Mfg. Co.*, 129 F.3d 1247, 1251 (Fed. Cir. 1997). Appellee's Brief, p.44.

In *Bloom* the specification described the injected gas stream as a "source, which may include air, POC [products of combustion] or gaseous fuel." A separate gas stream was not a necessary limitation as set forth in the patent, and was not included in the original claims at issue. The amendment narrowed the claims to exclude an injected gas stream that includes combustion air, and to require a separate combustion air stream. The change was necessary in order to distinguish Bloom's injected stream from that shown in the British patent. *Id.* at 1249-51.

In contrast, the additional language in claim 20(c)(i), namely, "*in which an increase in a Z-axis value does not correspond to a decrease in a Y-axis value*" is a limitation that was inherent in claim 9(c)(i). This is because original claim 9 included the limitation that the weighting strategy must take place between a low Y, low Z coordinate and a high Y, high Z coordinate. **A243** (7:66-8:2).

There is no dispute that the terms low Y, low Z equate to Y1, Z1 and the terms high Y, high Z equate to Y3, Z3 coordinates. *See* Appellant's Brief, pp. 29-30.

There is also no dispute that the weighting strategy occurs within a 3x3x3 volumetric matrix with an X, Y, Z orthonormal coordinate system. *Id.* at pp. 31-32.

The plain language of claim 9(c)(i) and 20(c)(i) requires that the weighting strategy occur between a Y1, Z1 coordinate and a Y3, Z3 coordinate. Thus, it is clear that two rows of the bottom and top layer each are excluded from the weighting strategy of both original claim 9(c)(i) and 20(c)(i).[8] *Id.* at pp. 29-32.

Claim 20(c)(i) merely clarifies what is already an absolute built-in requirement in claim 9(c)(i). Namely, as the Z-axis increases, the Y-axis may not decrease. This is necessarily the case as long as the weighting strategy occurs **between a Y1, Z1 coordinate and a Y3, Z3 coordinate**.

There is no absolute rule for determining whether an amended claim is legally identical to an original claim. An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical for the purpose of §252. *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 977 (Fed.Cir.1986); *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417 (Fed.Cir.1989). Determination of whether a claim change during reexamination is substantive requires analysis of the scope of the original and reexamined claims in light of the specification, with attention to the references that occasioned the reexamination, as well as the prosecution history and any other relevant

---

[8] *See* Section II. A & B *supra.*

information. *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362-63 (Fed.Cir.1991).

In this case, the claim scope in original claim 9(c)(i) is identical to new claim 20(c)(i). The additional language merely clarifies what is obvious when one translates the word picture of claim 9(c)(i) into a visual illustration. Appellant's Brief, pp. 29-32. *See also*, Section II. A and B. *supra.*

**CONCLUSION**

For the foregoing reasons, the District Court's grant of summary judgment finding that subsequent to the *ex parte* reexamination original claim 9 is not substantially identical to new claim 20 should be reversed and this case remanded with instructions to allow a trial on the merits.

Dated:          January 29, 2016                Respectfully submitted,

                                                 /s/ Melvin K. Silverman
                                                Melvin K. Silverman
                                                M.K. Silverman & Associates
                                                1000 West McNab Road,
                                                Suite 308
                                                Pompano Beach, FL 33069
                                                (954) 489-0502

                                                Jacqueline Tadros
                                                Jacqueline Tadros P.A.
                                                401 East Las Olas Blvd.,
                                                Suite 1400
                                                Fort Lauderdale, FL 33301
                                                (954) 351-7479

                                                *Attorneys for Plaintiff-Appellant*

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 for the Federal Circuit

*Triple Tee Golf, Inc. v. Taylor Made Golf Company, Inc.*, 2015-1564

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by M.K. SILVERMAN & ASSOCIATES, counsel for Appellant to print this document. I am an employee of Counsel Press.

On **January 29, 2016,** counsel has authorized me to electronically file the foregoing **Reply Brief for Plaintiff-Appellant** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Gary A. Clark
Bridgette A. Agness
Sheppard, Mullin, Richter & Hampton, LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213-620-1780
gclark@sheppardmullin.com
bagness@sheppardmullin.com
*Attorney for Defendant-Appellee*

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

January 29, 2016                                        /s/ Robyn Cocho
                                                         Counsel Press

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 5522 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).


2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.


Dated:          January 29, 2016

/s/ Melvin Silverman
_____
Melvin K. Silverman
*Attorney for Plaintiff-Appellant*